```
 1                   UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
 2                         EASTERN DIVISION

 3   UNITED STATES OF AMERICA,        Case No. 4:20cr422
                                      Akron, Ohio
 4              Plaintiff,            October 21, 2020

 5         vs.

 6   LARESE KENNETH ALLEN, SR.,

 7              Defendant.

 8
                       TRANSCRIPT OF PROCEEDINGS
 9               BEFORE THE HONORABLE SARA LIOI
                  UNITED STATES DISTRICT JUDGE
10

11                    COMPETENCY HEARING

12

     APPEARANCES:
13
     For the Government:       Jason M. Katz
14                             Office of the U.S. Attorney
                               Northern District of Ohio
15                             325 City Centre One
                               100 East Federal Plaza
16                             Youngstown, Ohio  44503
                               330-740-6997
17

18   For the Defendant:        Debra Kanevsky Migdal, Esq.
                               Office of the Federal Public
19                             Defender - Akron
                               Northern District of Ohio
20                             700 Akron Centre Plaza
                               50 South Main Street
21                             Akron, Ohio  44308
                               (330) 375-5739
22

23

24

25
```

1

2

3      Court Reporter:              Lori Ann Callahan, RMR-CRR
                                    United States District Courthouse
4                                   Room 568
                                    2 South Main Street
5                                   Akron, Ohio  44308
                                    (330) 819-8676
6

7

8

9

10     Proceedings recorded by mechanical stenography, transcript
       produced by computer-aided transcription.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | - - - |
| 3 | THE COURT:  All right. |
| 4 | MS. MIGDAL:  Good afternoon, Your Honor. |
| 5 | THE COURT:  We are here on Case Number 4:20cr422, |
| 6 | United States of America versus Larese Allen, Sr. |
| 7 | We are conducting this proceeding by video |
| 8 | conference. |
| 9 | And, Ms. Migdal, have you had an opportunity to |
| 10 | confer with your client regarding the purpose of this |
| 11 | hearing today? |
| 12 | MS. MIGDAL:  I have, Your Honor. |
| 13 | THE COURT:  And I know that you are asking for a |
| 14 | competency examination. |
| 15 | Do you think he is at least -- do you think he |
| 16 | understands the proceedings enough to consent to this video |
| 17 | conference hearing? |
| 18 | MS. MIGDAL:  I do. |
| 19 | THE COURT:  Okay.  So, Mr. Allen, you have an |
| 20 | opportunity to either have this hearing in person or by |
| 21 | video conference.  And I understand that after a |
| 22 | consultation with your attorney, you wish to proceed by way |
| 23 | of video conference. |
| 24 | Is that correct, sir? |
| 25 | THE DEFENDANT:  Yes, ma'am. |

1          THE COURT:  Okay.  So the court finds that Mr.

2     Allen has consented to the use of video teleconferencing to

3     conduct this hearing today and that he has done so after

4     consultation with his attorney and, therefore, the

5     proceedings held on this day may be conducted by video

6     teleconferencing.

7          Next, I will indicate the following are

8     participating in the hearing:  Assistant United States

9     Attorney Jason Katz representing the United States; Attorney

10    Debra Migdal representing Mr. Allen; of course Mr.  Allen

11    from whom we have already heard.  I have permitted a

12    relative of Mr. Allen's to participate to just view the

13    proceedings and that is Frances Johnson.  We also have my

14    courtroom deputy clerk, Christina Eckert, and the court

15    reporter, Lori Callahan.

16         So by way of background, on August 13, 2020,

17    Mr. Allen was indicted on a two-count indictment.

18         Count 1 alleged the offense of transmitting a

19    telephonic bomb threat via interstate commerce.  And Count 2

20    was one count of felon in possession of a firearm.

21         Before the court is the motion filed on behalf of

22    the defendant for a court-ordered competency examination and

23    hearing.  The court has also taken the liberty of looking at

24    the pretrial services report in this case, which did make

25    reference to some mental health issues and diagnoses, as

1    well as two previous -- two previous competency examinations

2    that I think were performed in 2013.

3            And so, therefore, Ms. Migdal, I will ask you,

4    I've read your motion, is there anything further to add to

5    the motion?

6            MS. MIGDAL:  Well, Your Honor, I think my motion

7    -- the motion expresses my concerns, and the court does have

8    the background.

9            I did think it might be helpful to the court, but

10   more so to the Bureau of Prisons, if I can provide very

11   brief testimony from my client's grandmother.  My client's

12   grandmother testified at the preliminary hearing and

13   detention hearing, and normally I forward that transcript,

14   the relative portions, to the Bureau of Prisons so that they

15   have the benefit of that information.

16           However, when I requested that transcript, I was

17   informed that the court reporting equipment on that day or,

18   in this instance, had malfunctioned and there is no

19   transcript available for that proceeding before Judge

20   Henderson, which is a shame because it was a pretty -- you

21   know, it was an involved hearing.

22           But I just wanted to note with the court's

23   schedule and with the court's permission if it permits, I

24   would like to present some very brief testimony regarding my

25   client that may be relevant to this court's determination

1    and to the Bureau of Prisons in determining my client's

2    competency.

3             THE COURT:  Okay.  And about how long do you think

4    that might last because I do have a 1:30?  That's the only

5    reason I am asking.

6             MS. MIGDAL:  I would expect no more than ten

7    minutes tops.

8             THE COURT:  Okay.  Any objection, Mr. Katz?

9             MR. KATZ:  No, Judge.

10            THE COURT:  Okay.  All right.  Then let's go

11   ahead.  Let's go forward with the brief testimony.

12            I will ask the courtroom deputy clerk to please

13   administer the oath to Ms. Johnson.

14            If you would just raise your right hand,

15   Ms. Johnson.

16                      FRANCES JOHNSON

17   of lawful age, a witness called by the United States, being

18   first duly sworn, was examined and testified as follows:

19            THE COURT:  All right.  And you may proceed,

20   Ms. Migdal.

21            DIRECT EXAMINATION OF FRANCES JOHNSON

22   BY MS. MIGDAL:

23    Q.  Ms. Johnson, I am going to ask you a few questions.

24   Some of them will be leading just because of the

25   circumstances of this hearing.

1          May you -- would you mind explaining your relationship

2      to Mr. Allen?

3          How are you related?

4    **A.**  He's my grandson.

5    **Q.**  Okay.  And were you involved in raising him?

6    **A.**  Yes, I had been since he was born.

7    **Q.**  Okay.  And is that because his mother was very young?

8          How old was she?

9    **A.**  Fourteen.

10   **Q.**  And his father was -- was his father involved in his

11     upbringing?

12   **A.**  No, he wasn't.

13   **Q.**  And why was that?

14   **A.**  His father had took advantage of his mother.

15   **Q.**  Was his mother --

16   **A.**  Because she was --

17   **Q.**  Go ahead.  I'm sorry.  Go ahead.

18   **A.**  Because she had a disability, and his father had took

19     advantage of her.

20   **Q.**  Okay.  And was that a mental health disability?

21   **A.**  Yes, it was.

22   **Q.**  And Mr. Allen's father is in prison?

23   **A.**  Yes, he is.

24   **Q.**  Is he serving a sentence, and how long is his sentence?

25   **A.**  I believe he got life.

1    **Q.**   Okay.  Now, raising Larese, did you determine at a

2    young age that he had mental health issues?

3    **A.**   Yes.  I determined he was disabled, that he had

4    disabilities when he was born and he had -- and he started

5    having problems growing up.  So he was going to facilities

6    to be better.  I had him going to facilities as he was

7    growing up, and he was labeled that.

8    **Q.**   When you say facilities, was he hospitalized as a child

9    or youth in connection with mental illness?

10   **A.**   Yes.

11   **Q.**   Did that continue as an adult?

12   **A.**   Yes, all through his life.

13   **Q.**   It is my understanding that he has been previously

14   diagnosed with bipolar disorder and depression.

15       Were you are aware of that?

16   **A.**   Yes.

17   **Q.**   And lack of impulse control, among other things?

18   **A.**   Yes.

19   **Q.**   In the course of his treatment for mental health, is he

20   on medication?

21   **A.**   You are fading out.

22   **Q.**   Has Larese been on medications in connection with his

23   mental illness?

24   **A.**   Yes.

25   **Q.**   Did those medications include Seroquel and Xanax?

Lori A. Callahan, RMR-CRR       (330) 252-6022

1    **A.**  Yes.

2    **Q.**  I would like to specifically talk to you about Larese's

3    ability to understand simple things and any comprehension

4    deficits he might have.

5        Do you have any concerns about his ability to

6    understand simple matters?

7    **A.**  He has a very hard time understanding, and you might

8    tell him, and then he loses all concept of what you telling

9    him.  You have to repeat it.  He will come back and ask you

10   again like you never told him before, and he has a reading

11   comprehension.  He has a lot of mental disabilities.

12   **Q.**  Is he -- do you know if he's illiterate?

13   **A.**  Yes, very illiterate, very.

14   **Q.**  Do you occasionally have to draw pictures in order to

15   get him to understand some things you are trying to explain

16   to him?

17   **A.**  Yes.  I have to be very visual with him.

18   **Q.**  Now, you indicated early in your testimony that

19   Mr. Allen's mother, who I believe is your daughter -- is

20   that correct?

21       Is his mother your daughter?

22   **A.**  Yes.

23   **Q.**  And your daughter has some also some mental health

24   issues, and I believe that you have previously informed me

25   that it runs in the family.

1       Could you please tell the court about that?

2    **A.**   Yes.  She has learning and mental disabilities, and her

3    father has them also.

4    **Q.**   And are there any other relatives in the family that

5    also have issues regarding intellectual functioning?

6    **A.**   Well, I don't know anything further back than her

7    father because I don't know his family because he's from

8    down south, but like I said, she has them really bad.  She's

9    been mentally disabled since she was a child also.

10   **Q.**   And lastly, I have one other question.

11       Has Larese -- strike that.

12       Has your concerns about Larese increased over the years

13   in terms of mental health issues?  Has he had various

14   problems?

15   **A.**   Yes.  He a lot of trauma dealing with his -- two of his

16   daughters dying and dealing with his one daughter dying from

17   cancer.  Watching her die from cancer was really hard for

18   him, and then his one cousin getting shot six times in the

19   head, he's been through a lot.

20   **Q.**   The other child, Ms. Johnson, the other child that

21   passed away, was that his first?

22   **A.**   Yeah.  His first daughter, when she passed away, the

23   hospital allowed him to sleep with the dead baby, which was

24   really bad, too, because I'm like, who does that?  And he

25   slept with this dead baby, and he thought he could take the

1    dead baby out the hospital with him, and he actually tried

2    to do it.  I mean, he's gone through a lot.  And he couldn't

3    understand why he couldn't take this dead baby home with

4    him.

5    Q.  All right.  I do appreciate you answering my questions.

6         That's all of the questions I have.

7              MS. MIGDAL:  Thank you very much, Your Honor.

8              THE COURT:  Certainly.

9              Mr. Katz, any questions for Ms. Johnson?

10             MR. KATZ:  No, Judge.  Thank you.

11             THE COURT:  All right.  Thank you very much for

12   your testimony, Ms. Johnson.

13             Ms. Migdal, do you want to present any other

14   evidence?

15             MS. MIGDAL:  No, Your Honor.  I would rely on the

16   information referred to earlier in the pretrial services

17   report, the testimony of Ms. Johnson, and my concerns with

18   regard to my encounter with the client and his limited

19   abilities.

20             THE COURT:  All right.  And, Mr. Katz, any

21   opposition to the motion for a psychiatric or psychological

22   evaluation?

23             MR. KATZ:  Judge, the government has no objection.

24             I would like to note, however, because I have some

25   other cases that involve competency mental health

1    evaluations, the BOP has been loathed to pick up anyone for

2    competency evaluations during the current pandemic. I

3    reached out to the United States Marshal Services prior to

4    this hearing, and I was told that they are, in fact,

5    resuming picking up inmates for evaluation and transporting

6    them to a BOP facility for evaluation.

7            However, it is still taking longer than normal for

8    the BOP once they get the order to come out or to make a bed

9    available and grab them.

10           So I just wanted all the parties to know the

11   situation is moving forward, but it is moving forward more

12   slowly than it has prior to the pandemic.

13           THE COURT: Ms. Migdal, you are aware of that on

14   behalf of your client?

15           MS. MIGDAL: Yes. I had the same conversation

16   with the marshals, and that's consistent with what I have

17   been told.

18           THE COURT: Mr. Katz, I really appreciate your

19   providing that background information relative to the status

20   of transport through the marshal service to the BOP

21   facilities.

22           Also, since this is under 18, United States Code,

23   Section 4241, normally it's a 30-day period of time once

24   they're at the facility, plus some additional 15 days, but I

25   think what Mr. Katz is trying to say is this might not be

1   able to be performed in that period of time because of a lot

2   of factors.

3           And so I just want to have everyone go into this

4   eyes wide open, that it might take longer than the statutory

5   period of time to get this performed and to get -- even to

6   get Mr. Allen transported either to the facility or returned

7   from the facility to the district.  So just so everybody is

8   clear on that.

9           Any questions, Ms. Migdal?

10          MS. MIGDAL:  No, Your Honor.

11          THE COURT:  Mr. Allen, do you have any questions?

12          THE DEFENDANT:  No.

13          THE COURT:  Mr. Katz, again, thank you for the

14  information.

15          And, Ms. Migdal, I appreciate the fact that you

16  followed up personally with the marshal service, as well.

17          All right.  Based upon the representations of

18  Ms. Migdal, as well as the information contained in the

19  pretrial services report regarding Mr. Allen's mental health

20  history, as well as the testimony that we heard today, the

21  court finds that there's reasonable cause to believe that

22  Mr. Allen may presently be suffering from a mental disease

23  or defect rendering him mentally incompetent to the extent

24  he is unable to properly assist in his defense, and, thus,

25  the court finds the motion for a court-ordered competency

1    examination well taken.

2         The court will issue an order requiring Mr. Allen

3    to undergo a psychiatric and/or psychological examination to

4    determine his mental competence pursuant to Title 18, United

5    States Code, Section 4241 and 18, United States Code,

6    Section 4247(b) and (c).

7         All right.  And I will issue a more complete order

8    regarding the motion.

9         Anything further to present to the court, Mr.

10   Katz?

11        MR. KATZ:  No, Judge.  Thank you.

12        THE COURT:  Ms. Migdal?

13        MS. MIGDAL:  No.  Thank you, Your Honor.

14        THE COURT:  You are welcome.

15        Mr. Allen, do you understand you will be

16   transported to a BOP facility at some point for a competency

17   evaluation, sir?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Okay.  Do you have any questions?

20        THE DEFENDANT:  No.

21        THE COURT:  All right.  That concludes this

22   proceedings.  Thank you.

23        MR. KATZ:  Thank you, Judge.

24        THE COURT:  Certainly.

25        MS. MIGDAL:  Thank you, Your Honor.

1           THE COURT:  You are welcome.

2           THE WITNESS:  Thank you very much.

3           THE DEFENDANT:  Thank you.

4           THE COURT:  You are welcome.

5

6                 C E R T I F I C A T E

7       I certify that the foregoing is a correct transcript

8   from the record of proceedings in the above-entitled matter.

9            s/Lori A. Callahan
             Lori Ann Callahan, RMR-CRR
10           U.S. District Court, Suite 568
             2 South Main Street
11           Akron, Ohio  44308
             (330) 252-6022
12

13

14

15

16

17

18

19

20

21

22

23

24

25

16

1                              I N D E X

2

3       DIRECT EXAMINATION OF FRANCES        6          21
        JOHNSON
        BY MS. MIGDAL
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                  Lori A. Callahan, RMR-CRR        (330) 252-6022