UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,          Case No. 4:20CR422
                       Akron, Ohio
   vs.               Wednesday, May 19, 2021
                       10:08 a.m.
LARESE KENNETH ALLEN, SR.,

       Defendant.


TRANSCRIPT OF COMPETENCY AND CHANGE OF PLEA HEARING
BEFORE THE HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:  Yasmine T. Makridis
                  Office of the U.S. Attorney-Youngstown
                  325 City Center One
                  100 East Federal Plaza
                  Youngstown, Ohio 44503
                  (330) 740-6986

For the Defendant:  Debra Kanevsky Migdal
                  Office of the Federal Public Defender
                  50 South Main Street, Suite 700
                  Akron, Ohio 44308
                  (330) 375-5739

Court Reporter:     Caroline Mahnke, RMR, CRR, CRC
                  Federal Building & U.S. Courthouse
                  2 South Main Street, Suite 568
                  Akron, Ohio 44308
                  (330) 252-6021




Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

<u>Wednesday, May 19, 2021</u>

1

2          THE COURT:  We are here on Case Number 4:20CR422,

3     United States of America versus Larese Kenneth Allen,

4     Senior.

5          Participating this morning are the following:

6     Assistant United States Attorney Yasmine Makridis,

7     representing the United States; Attorney Debra Migdal,

8     representing Mr. Allen; we also have the defendant, Larese

9     Kenneth Allen, Senior with us; my extern, Daniel Tiley;

10    Courtroom Deputy Clerk Christina Eckert; and of course our

11    court reporter, Caroline Mahnke.

12         I'll start with, Ms. Migdal, have you had an

13    opportunity to confer with your client regarding proceeding

14    by way of videoconference?

15         MS. MIGDAL:  I have, Your Honor, and he consents

16    to that.

17         THE COURT:  Very well.

18         Mr. Allen, do you understand that this proceeding

19    today is being held by way of videoconference?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  And have you had a chance -- your

22    attorney has indicated that you and she have talked about

23    proceeding in this fashion.

24         Is that correct?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And is it your desire to proceed in

2    this fashion, sir?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Is it your desire to proceed due to

5    the protocols in place for COVID-19?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  I see that even where you are seated

8    they are requiring you to wear a mask.

9       Is that correct?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  So the COVID-19 protocols are still

12    in place at the facility.

13       Is that fair to say?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  And then do you understand that I

16    would be willing to hold this proceeding in person if you

17    prefer?

18       Do you understand that?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Nonetheless, is it still your desire

21    to proceed by way of videoconference?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  All right.  Very well.

24       The Court finds that Mr. Allen has consented to the

25    use of video teleconferencing to conduct the proceedings

1      that will be held today and that he has done so after

2      consultation with his attorney.

3          The proceedings to be held today cannot be further

4      delayed without serious harm to the interest of justice for

5      the following specific reasons:

6          Due to the COVID-19 pandemic, the Court is now faced

7      with a backlog of criminal hearings.

8          The complaint was filed and the initial appearance was

9      held on July 14, 2020.

10         The indictment was filed on August 13, 2020.

11         Mr. Allen, who is in custody, wishes to enter a -- or

12     wishes to proceed with these proceedings today by way of

13     videoconference to avoid being quarantined following an

14     in-person hearing.

15         So with that, the Court finds that the proceedings

16     today may be conducted by way of video teleconferencing.

17         And I understand that the parties intend to not only

18     proceed with a competency hearing but also with perhaps a

19     change of plea hearing.

20         Is that correct, Ms. Migdal?

21             MS. MIGDAL:  Yes, Your Honor.  Thank you.

22             THE COURT:  You're welcome.

23         All right.  So, Mr. Allen, I will say to you that if

24     at any time you cannot see us or hear us, please let us know

25     because it is important that you are able to see us during

1    this proceeding and also to hear everything that is being

2    said.

3         So do you understand this instruction?

4                   THE DEFENDANT:  Yes, Your Honor.

5                   THE COURT:  And also, Mr. Allen, if at any time

6    you wish to have a private conversation with your attorney,

7    simply let us know.  And just as we did at the beginning of

8    this hearing before we started, we will allow you and your

9    attorney to speak privately and confidentially.

10        Do you understand that as well?

11                  THE DEFENDANT:  Yes, Your Honor.

12                  THE COURT:  Excellent.

13        All right.  So with respect to the competency hearing,

14   upon motion of defense counsel and without objection by the

15   government, on October 22, 2020, the Court ordered that Mr.

16   Allen undergo a psychiatric and/or psychological examination

17   to determine his medical -- to determine his mental

18   competence as provided in Title 18, United States Code,

19   Section 4241, and Title 18, United States Code, Sections

20   4247(b) and (c).

21        Mr. Allen was designated to FCI Butner for the

22   examination.

23        The examining forensic psychologist, Heather H. Ross,

24   Ph.D., issued a report dated April 26, 2021.  It was a

25   16-page report.

1          And I understand that the attorneys have both received

2     a copy of the report.

3          Is that correct, Ms. Makridis?

4               MS. MAKRIDIS:  It is, Your Honor.  Thank you.

5               THE COURT:  And for you as well, Ms. Migdal?

6               MS. MIGDAL:  Yes, Your Honor.

7               THE COURT:  All right.  And the report is also

8     filed on the Court's docket as well.

9          Let me just recite the docket number.  It is docket

10    number 21, and it is sealed for access by the parties only.

11         Are there any objections to the report of the

12    examining forensic psychiatrist -- I'm sorry, forensic

13    psychologist?

14         Any objections to the report?

15         Ms. Makridis?

16              MS. MAKRIDIS:  None, Your Honor.  Thank you.

17              THE COURT:  And Ms. Migdal?

18              MS. MIGDAL:  We have no objection to the ultimate

19    conclusion finding that Mr. Allen is competent.

20              THE COURT:  Very well.

21         Will there be any other evidence presented at this

22    hearing today?

23         Ms. Makridis?

24              MS. MAKRIDIS:  No, Your Honor.  Thank you.

25              THE COURT:  And Ms. Migdal?

1          MS. MIGDAL:  No, Your Honor.

2          THE COURT:  Okay.  And so just as Ms. Migdal

3   indicated, the examining forensic psychologist, Dr. Ross,

4   did find that Mr. Allen is competent to assist in his

5   defense and to proceed to trial if he chooses to do so.  And

6   therefore, based upon the evidence before me, the Court

7   finds that Mr. Allen understands the nature and consequences

8   of the proceedings against him and that he's able to assist

9   properly in his defense.

10          The Court finds that defendant, Larese Kenneth Allen,

11  Senior, is therefore competent to stand trial and to further

12  assist with his defense.

13          And the Court will be filing an order to this effect

14  following this hearing today.

15          So now that we have determined that Mr. Allen is

16  competent to proceed to trial, I understand that the parties

17  do wish to resolve this matter -- and I'll let Ms. Migdal

18  speak to that -- I understand, perhaps by way of open plea.

19          MS. MIGDAL:  Yes, Your Honor.  It is Mr. Allen's

20  intention to go forward with a guilty plea.  The government

21  has agreed, and I believe is prepared to confirm, that they

22  do not intend to file any additional charges based on

23  conduct that is being prosecuted by the state for matters

24  related to this investigation.  And based upon that, Mr.

25  Allen intends to enter a guilty plea.

1          THE COURT:  Very well.  Thank you, Ms. Migdal.

2       Ms. Makridis, would you like to respond?

3          MS. MAKRIDIS:  Yes, Your Honor.

4       It's my understanding from discussions with defense

5    counsel that Mr. Allen currently has a pending narcotics

6    case with Youngstown.  I do not intend to adopt that case

7    federally, so at this point the charges as presented in the

8    indictment are all that we have.

9       Thank you, Your Honor.

10          THE COURT:  Very well.  All right.

11          MS. MIGDAL:  Your Honor, may we just clarify that

12    the government --

13          THE COURT:  Sorry, Ms. Migdal.  You were breaking

14    up a little bit there.

15       You would like to clarify something.

16          MS. MIGDAL:  Yes.  I just wanted to clarify what

17    I believe to be the government's position regarding --

18          THE COURT:  You know what?  I'm sorry.  For some

19    reason you are breaking up, and I know it's difficult for

20    the court reporter to take down what you're saying.

21       I understand what you're saying, but I don't know that

22    the court reporter can take it down.

23          MS. MIGDAL:  Sorry.  I kept pressing the button.

24    So now I'm unmuted.  Is that better?

25          THE COURT:  Much better.

1    MS. MIGDAL:  I was trying to manipulate the

2    controls here.

3    Your Honor, I just wanted to clarify that the

4    government is agreeing not to proceed with the matters that

5    are pending in state court and doesn't intend to adopt them.

6    I think that's what the government intends.  I just

7    don't know that it was clear from that statement.

8    THE COURT:  Ms. Makridis, do you understand the

9    clarification that Ms. Migdal is seeking?

10    MS. MAKRIDIS:  Your Honor, candidly, I'm sorry.

11    Ms. Migdal is breaking up really bad.

12    THE COURT:  Okay.  So let's do this.  I think we

13    have had to do this on a number of occasions this week.

14    So, Christina, we're going to go off the record here

15    so that you can give Ms. Migdal instructions on how to call

16    in so that she will be more easily understood.

17    So let's go off the record.

18    (Discussion off the record.)

19    THE COURT:  All right.  We'll go back on the

20    record now.  Ms. Migdal, why don't you go ahead and indicate

21    the clarification which you are seeking because I'm not sure

22    the court reporter was able to fully understand it and I

23    know that Ms. Makridis was not.

24    MS. MIGDAL:  Thank you, Your Honor.

25    Your Honor, I just wanted clarification.  It's my

1  understanding, based on a conversation with the government,

2  that they have agreed not to prosecute Mr. Allen for conduct

3  that is being prosecuted in state court.  I believe the

4  matter is pending.  He's got counsel assigned.  And it's

5  based on some items that were found in his vehicle that he

6  was driving, namely tramadol.

7       I believe that the government is agreeing that they're

8  not going to prosecute Mr. Allen for that matter based on

9  the state prosecution.  I just wanted to make sure that that

10  is clear.

11            THE COURT:  All right.  Thank you, Ms. Migdal.

12       Ms. Makridis.

13            MS. MAKRIDIS:  That's correct, Your Honor.

14            THE COURT:  All right.

15            MS. MIGDAL:  Thank you, Your Honor.

16            THE COURT:  You're welcome.

17       I'm glad we were able to clarify that for the parties

18  and in particular for Mr. Allen.

19       All right.  So Mr. Allen?

20            THE DEFENDANT:  Yes, Your Honor.

21            THE COURT:  All right.  It is my understanding

22  that at this time you wish to withdraw your formerly entered

23  plea of not guilty and enter a plea of guilty in this case

24  to the two charges set forth against you in the indictment

25  which are as follows:

1          Count 1, transmitting a telephonic bomb via -- strike

2      that.

3          Count 1, transmitting a telephonic bomb threat via

4      interstate communication, in violation of Title 18, United

5      States Code, Section 844(e); and Count 2, felon in

6      possession of a firearm, in violation of Title 18, United

7      States Code, Sections 922(g)(1) and 924(a)(2).

8          Is this correct, sir?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  All right.  And I'll ask the

11     courtroom deputy clerk to please administer the oath to Mr.

12     Allen.

13         (The Defendant was sworn in.)

14             THE COURT:  Very well.  Thank you.

15     Mr. Allen, you are now under oath and have sworn to

16     tell the truth.  Do you understand that any answers that you

17     give that would later prove to be false or untruthful could

18     be used against you in a later prosecution for perjury?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Before I can decide whether to accept

21     your plea, sir, it is necessary that I ask a number of

22     questions of you to be sure that you understand the

23     constitutional rights that you will be giving up by entering

24     this plea and to make certain that you understand what the

25     consequences of this plea may be.

1     If you have any questions whatsoever, please ask me to

2   stop so that you may ask your question, and the Court, your

3   attorney, or the government's attorney will respond to your

4   question.

5     Also, as I stated before, if at any time you wish to

6   pause and speak privately with your attorney, simply let me

7   know and I will certainly permit you to do so.

8     And finally, again, just a reminder, if at any time

9   you cannot hear or see us, please let us know immediately so

10   that we can correct the technical difficulties that you

11   might be experiencing.

12     So, again, do you understand all of these

13   instructions, sir?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Perfect.

16     Please state your full name.

17          THE DEFENDANT:  Larese Allen, Senior.

18          THE COURT:  And how old are you, sir?

19          THE DEFENDANT:  27.

20          THE COURT:  Are you a citizen of the United

21   States?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Are you able to read, write, and

24   understand the English language?

25          THE DEFENDANT:  No.

1           THE COURT:  Okay.  Let's take these one at a
2    time.
3        Can you read the English language?
4           THE DEFENDANT:  No.
5           THE COURT:  Do you have any ability whatsoever to
6    read it?
7           THE DEFENDANT:  No.
8           THE COURT:  Okay.  Can you write in the English
9    language at all?
10          THE DEFENDANT:  No.
11          THE COURT:  And obviously we're having a
12   conversation, so it appears as though you can understand the
13   English language.
14       Is that correct?
15          THE DEFENDANT:  Yes.
16          THE COURT:  Okay.
17       So, Ms. Migdal, would you like to speak to the first
18   two prongs of that question, the reading and the writing?
19       I know it was addressed in the report by the forensic
20   psychologist, and if you could just remark on that as to his
21   ability to enter this plea.
22       I know that Dr. Ross found him competent.  I know that
23   he had indicated some difficulties with writing when she
24   examined him, but if you could speak to the issue, I would
25   appreciate it.

1       MS. MIGDAL:  Certainly, Your Honor.

2          I am aware that Mr. Allen is at least functionally

3    illiterate.

4          THE COURT:  Wait a minute.  Closer to your

5    microphone, please.

6          MS. MIGDAL:  Your Honor, I am aware that Mr.

7    Allen is at least functionally illiterate.  And I was aware

8    of that early on in the case and have taken that into

9    consideration in my discussions with him as well as

10   consideration of whether there should be a plea agreement in

11   writing or not.

12       So I have discussed with my client all aspects of his

13   case.  I've had a full discussion with him since return from

14   prison.

15       And I am comfortable that Mr. Allen understands the

16   nature of the charges against him and can assist in his own

17   defense.

18       He does understand the rights --

19          THE COURT:  He does understand what?

20          MS. MIGDAL:  Based on my discussions with him at

21   length, he does appear to understand the nature of the

22   charges against him, the government's burden, and his rights

23   had he chosen to go to trial.

24       My further understanding, after discussing it with

25   him, is that he wishes to waive those rights and proceed

1    with a guilty plea and that he has made a knowing and

2    intelligent decision.

3         So I, Your Honor, I'm aware that there is some

4    limitations that exist here, according to my client reading

5    and writing, and that there are mental health issues.

6         But I do, Your Honor, believe that he's competent to

7    go forward as I indicated earlier.

8              THE COURT:  Yes.

9              MS. MIGDAL:  And so we are prepared to -- I

10   believe he's prepared to --

11             THE COURT:  What's the last part?  You're

12   prepared to?

13             MS. MIGDAL:  I believe Mr. Allen is prepared to

14   respond to the Court's inquiry and is in a position to do so

15   regardless of his ability to read and write.

16        Thank you.

17             THE COURT:  Very well.

18        Yes.  And there is, on page 3 of 16 of the report,

19   there is a section relative to his educational history.  And

20   I am comfortable, having read the report and now having

21   heard from Ms. Migdal, that Mr. Allen is able to comprehend

22   what is being said to him.

23        Clearly he answered that question in a very specific

24   way, that while he could not read and write, perhaps, very

25   well, he can certainly understand the English language.

1          So I found that that was very discerning and exacting,

2     and so we will proceed with the plea.

3          So, Mr. Allen, I know what the report says relative to

4     how far you went in school, but if you could tell the Court,

5     how far did you go in school, sir?

6                    THE DEFENDANT:  I dropped out at 12th grade.

7                    THE COURT:  Did you say 10th or 12th?

8                    THE DEFENDANT:  12th.

9                    THE COURT:  Yeah, 12th.  And that's what the

10    report says.  I just wanted it to be clear for the record.

11    It indicates you dropped out of school in the 12th grade and

12    have not attempted any further education.

13         Is that correct?

14                    THE DEFENDANT:  Yes, Your Honor.

15                    THE COURT:  Are you presently under the influence

16    of -- let me start that sentence over.

17         I know that you are on some medications now.  Are you

18    presently under the influence of any drugs, any alcohol,

19    and/or any chemical substance that might in any way affect

20    your ability to understand --

21                    THE DEFENDANT:  No, Your Honor.

22                    THE COURT:  -- the conversation that I'm having

23    with you today?

24                    THE DEFENDANT:  No, Your Honor.

25                    THE COURT:  Okay.  Do you have -- and we

1    understand that your mental conditions have been set forth

2    in this evaluation report.

3         And I just want to make sure that those mental

4    conditions are not in any way interfering with your ability

5    to understand our discussion today.

6         Are they interfering in any way, sir?

7              THE DEFENDANT:  No, Your Honor.

8              THE COURT:  Okay.

9         Have you received a copy of the indictment which

10   contains the written charges made against you in this case,

11   sir?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Have you had sufficient time and

14   opportunity to review the indictment and discuss the charges

15   and the case in general with your attorney, Ms. Migdal?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Excellent.

18        It's the Court's understanding that there is no

19   written plea agreement between you and the government,

20   correct?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Do you understand that you have a

23   right to persist in, that is, to maintain your plea of not

24   guilty as to the charges set forth in the indictment, and in

25   that event you would go to trial?

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  Do you understand that if there were

3  a trial in this case, you would enjoy certain important

4  constitutional rights?

5      THE DEFENDANT:  Yes, Your Honor.

6      THE COURT:  Do you further understand that by

7  entering a plea of guilty, you are giving up these rights,

8  sir?

9      THE DEFENDANT:  Yes, Your Honor.

10      THE COURT:  And I'm going to review the rights

11  with you now just to make sure you understand what they are

12  and therefore understand what rights you will be giving up

13  if you enter a plea of guilty to these charges today.

14      First of all, you have a constitutional right if you

15  wish to have your case tried to a jury.  That would be a

16  jury of 12 people.  And they would have to reach a unanimous

17  verdict in this case.

18      By entering a plea of guilty to the charges, you are

19  giving up your right to a jury trial.

20      Do you understand this right?

21      THE DEFENDANT:  Yes, Your Honor.

22      THE COURT:  Do you give up this right?

23      THE DEFENDANT:  Yes, Your Honor.

24      THE COURT:  You also have a right, if the

25  government agrees and the Court approves, to waive a jury

1    and to have this case tried before me, the judge, without a

2    jury.

3         Do you understand this right, sir?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  And do you give up this right?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  If there were a trial in this case,

8    you would be presumed innocent.  The government would be

9    required to prove that are you guilty by competent evidence

10   beyond a reasonable doubt.

11        Do you understand this right, sir?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  And do you give up this right?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  If there were a trial in this case,

16   you would have the right to confront and cross-examine

17   witnesses called against you.  That is, witnesses for the

18   government would have to come to court and testify in your

19   presence.  And your attorney could cross-examine those

20   witnesses and object to evidence offered by the government

21   in this case.

22        Do you understand this right, sir?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  And do you give up this right?

25             THE DEFENDANT:  Yes.

1    THE COURT:  If you were to go to trial, you would

2    also have the right to present evidence and to call

3    witnesses to testify in your own behalf.

4         You could compel the production of evidence and the

5    appearance of witnesses in court by the issuance of a

6    subpoena which is a court order.

7         Do you understand this right, sir?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  And do you give up this right, sir?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  If there were a trial, you would have

12   the right to testify in your own behalf, but you would also

13   have the right not to testify.

14        That is, you would have the right to remain silent in

15   this case, and no argument or suggestion of your guilt could

16   be made based upon your exercise of your right to remain

17   silent.

18        Do you understand this right, sir?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  And do you give up this right?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Do you understand that if I accept

23   your plea of guilty, you will be giving up all of the rights

24   we have just discussed, there will be no trial, and I will

25   enter a judgment of guilty against you in this case as to

1      both counts set forth against you in the indictment?

2                    THE DEFENDANT:  Yes, Your Honor.

3                    THE COURT:  Do you also understand that even

4      though you are currently represented by an attorney, that

5      you have the right to an attorney at every stage of the

6      proceedings, and if necessary and appropriate, one will be

7      appointed to represent you?

8                    THE DEFENDANT:  Yes, Your Honor.

9                    THE COURT:  Also, do you understand, and even

10     though you told me that you are a citizen of the United

11     States, but nonetheless, do you understand that a convicted

12     person who is not a United States citizen may be removed

13     from the United States, denied citizenship, and denied

14     admission to the United States in the future?

15                   THE DEFENDANT:  Yes, Your Honor.

16                   THE COURT:  Okay.  Do you have any questions for

17     me thus far, Mr. Allen?

18                   THE DEFENDANT:  No, Your Honor.

19                   THE COURT:  All right.  And do you wish to

20     proceed with your plea of guilty, sir?

21                   THE DEFENDANT:  Yes, Your Honor.

22                   THE COURT:  All right.  Very well.

23          Now, you are charged with committing the offense of

24     transmitting a telephonic bomb threat via interstate

25     communication.

1          Do you understand that the statutory penalties for

2     this offense are a term of imprisonment of up to ten years,

3     a fine in the amount of $250,000, a term of up to three

4     years of supervised release, and a $100 special assessment?

5                THE DEFENDANT:  Yes, Your Honor.

6                THE COURT:  You are also charged, sir, with

7     committing the offense of felon in possession of firearm.

8     Do you understand that the statutory penalties for this

9     offense are a term of imprisonment of up to ten years, a

10    fine in the amount of $250,000, a term of up to three years

11    of supervised release, and a mandatory $100 special

12    assessment?

13               THE DEFENDANT:  Yes, Your Honor.

14               THE COURT:  Now, depending upon the nature of

15    your sentence, if you violate any term or condition of

16    probation or supervised release, such as the Court may

17    impose, the violation could result in a period of

18    incarceration or other additional penalties.  And in some

19    circumstances, the combined term of imprisonment under the

20    initial sentence and the additional period of incarceration

21    for the violation could exceed the statutory term for the

22    offense.

23          Do you understand this, sir?

24               THE DEFENDANT:  Yes, Your Honor.

25               THE COURT:  Do you understand that the Court may

1     order you to pay the costs of prosecution and sentence and

2     that the Court may order you to pay a fine as a condition of

3     your sentence?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Do you also understand that if

6     appropriate, the Court may order you to pay restitution as a

7     condition of your sentence?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Ms. Makridis, will the government be

10    seeking restitution in this case?

11             MS. MAKRIDIS:  No, Your Honor.  Thank you.

12             THE COURT:  Thank you.

13       All right.  Now, sentencing rests within the

14    discretion of the Court.  And federal sentencing law

15    requires the Court to impose a reasonable sentence

16    sufficient but not greater than necessary to comply with the

17    sentencing purposes set forth in the sentencing statute

18    which is Title 18, United States Code, Section 3553(a).

19       In determining a sentence, the Court must consider the

20    advisory sentencing guidelines and other sentencing factors

21    set forth in the sentencing statute.  And the Court may

22    depart from or vary from the guidelines.

23       Do you understand this, sir?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Do you understand that any

1  recommendations that the parties might make relative to

2  sentencing are not binding upon the Court and that the Court

3  may impose any sentence provided by law?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  In this regard, do you also

6  understand that the Court alone will decide the applicable

7  sentencing range under the advisory sentencing guidelines,

8  and further decide whether there is any basis for a variance

9  or departure from those guidelines, and in the end determine

10  what sentence to impose?

11            THE DEFENDANT:  Yes, Your Honor.

12            THE COURT:  And do you understand that the terms

13  "variance" or "departure" would allow the Court to either

14  sentence above what the advisory guideline range is or below

15  the advisory guideline range?

16       Do you understand that that's what those terms mean

17  generally speaking?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  And there are specific reasons why

20  the Court may decide that a departure is applicable and the

21  same thing for a variance.

22       So do you understand those concepts, sir?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  All right.  Excellent.

25       So next we're going to discuss the advisory sentencing

1    guidelines and how they may impact your sentence in this

2    case.

3         Do you understand that the guideline sentencing range

4    will be determined by the Court at the time of sentencing

5    after a presentence report has been prepared by the United

6    States Probation Office and reviewed by the parties?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Do you further understand that even

9    though we will be discussing the guidelines that might apply

10   in your case today, that we cannot know for certain what

11   guidelines actually will apply until that presentence report

12   is prepared and we return to the Court for your sentencing

13   hearing?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Now, we are going to display at this

16   time a copy of the sentencing table.

17        Okay.  There you go.

18        Can you see that sentencing table, sir?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Perfect.  Have you seen a copy of the

21   sentencing table before, sir?

22             THE DEFENDANT:  No.

23             THE COURT:  Okay.  Ms. Migdal, have you had

24   discussions with your client regarding the sentencing table?

25             MS. MIGDAL:  I have, Your Honor.  I believe I had

1    sent it, but I had discussed it at length with my client.

2                THE COURT:  Okay.  All right.  So let's take a

3    look at the sentencing table.

4         Do you see -- I'll ask the courtroom deputy clerk to

5    scroll down so that you can see the table in its entirety.

6         Do you see that on the left-hand side there are

7    numbers that are from 1 to 43?

8         Do you see that?

9                THE DEFENDANT:  Yes.

10               THE COURT:  Okay.  Those numbers represent

11   offense level.

12        And the offense level is determined based upon

13   calculations contained within the guidelines.

14        And we'll have some estimates as to what your offense

15   level might be in this case in just a moment.

16        And then the numbers across the top of the page,

17   you'll see there are columns from I to VI, and those Roman

18   numerals, they stand for criminal history category.

19        And then the numbers below the Roman numerals in

20   parentheses represent criminal history points.

21        And your criminal history category is based upon the

22   number of criminal history points you have.  Your criminal

23   history points are calculated based upon the age and nature

24   of your prior criminal offenses.

25        So do you understand that generally speaking?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Okay.  So your guideline sentence is

3     a combination of your offense level and your criminal

4     history category.

5          Do you understand that?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Okay.  So we are going to now review

8     the table more specifically with some examples.

9          And I'll ask the attorneys if you have an

10    estimation -- I know that you can't know for certain -- as

11    to what Mr. Allen's criminal history might be and what the

12    offense level calculation might be in this case.

13         So either Ms. Makridis or Ms. Migdal, you may share

14    that information.

15         I guess I'll start with Ms. Makridis to see if you

16    want to give any estimates and then ask Ms. Migdal

17    thereafter.

18         MS. MAKRIDIS:  Your Honor, I believe that his

19    offense level would be a 22 before acceptance of

20    responsibility and that he is a criminal history category

21    IV.

22         THE COURT:  All right.  And, Ms. Migdal, do you

23    have anything to add to that estimate?

24         MS. MIGDAL:  No, Your Honor.

25         Well, yes.  I would indicate that as indicated by the

1    government, we believe that he is a 22, that with a

2    reduction for acceptance, that would take him to an offense

3    level 19.

4         We believe his criminal history (unintelligible) a IV,

5    less than that.

6              THE COURT:  You believe his criminal history

7    might be something less than a IV?

8              MS. MIGDAL:  Yes, Your Honor.

9              THE COURT:  Okay.  All right.  Well, time will

10   tell when we get the final presentence report.

11        But let's take the information that we just received

12   and use that by way of example.

13        So, Mr. Allen, if it turns out that your offense level

14   is a 22, we'll just take this for an example, and your

15   criminal history category is a IV, do you see in that

16   scenario the guideline range would be 63 to 78 months?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Okay.  Now, if you receive a

19   three-level reduction for acceptance, that could possibly

20   result in an offense level of 19.  And if your criminal

21   history category turns out to be a IV, then what would the

22   range be under that scenario?

23        Can you see it on the screen there?

24              THE DEFENDANT:  Yes.

25              THE COURT:  What would the range be?

1     THE DEFENDANT:  46 to 57.

2     THE COURT:  Oh, perfect.  That was really well

3 done.  It's hard to do it on the screen, and you did very

4 well.

5    Okay.  If it turns out that your offense level is 19

6 and your criminal history category is a III instead of a IV,

7 then do you see it would be 37 to 46 months?

8     THE DEFENDANT:  Yes.

9     THE COURT:  And then if for some reason it turns

10 out it's a V, then under that scenario, 19 and V would be 57

11 to 71 months.

12    Do you understand that?

13     THE DEFENDANT:  Yes.

14     THE COURT:  Okay.  So do you understand how the

15 table works?

16    It's your offense level --

17     THE DEFENDANT:  Yes.

18     THE COURT:  -- and your criminal history

19 category, and that results in the guideline sentencing

20 range.  Okay?

21     THE DEFENDANT:  Yes.

22     THE COURT:  Any questions regarding the table?

23     THE DEFENDANT:  No, Your Honor.

24     THE COURT:  All right.  Perfect.

25    So you and your attorney will receive the presentence

1    report that we've been talking about well in advance of the

2    sentencing hearing.  You'll have a right to review that

3    report and gain a better understanding of what your

4    guideline sentence might be, what your criminal history

5    might be, and what your offense level calculation might be.

6         And of course at the time of sentencing, we will have

7    a further discussion about that.

8         So do you understand all of this, sir?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  So do you understand that even though

11   we estimated what your guideline sentence might be today, we

12   simply cannot know until we receive that presentence report

13   and return for your sentencing hearing as to what your

14   guideline sentence will be in actuality?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Okay.

17        Has anyone made any promises to you as to what your

18   criminal history category might be in this case, sir?

19             THE DEFENDANT:  No, Your Honor.

20             THE COURT:  And has anyone made any promises to

21   you as to what your guideline sentence might be?

22             THE DEFENDANT:  No, Your Honor.

23             THE COURT:  Okay.  But nonetheless, you and your

24   attorney have had some discussions regarding her estimates,

25   correct?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  Do you understand that

3     notwithstanding that, in the end it's the Court that makes

4     the final decision regarding that?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Okay.  Perfect.

7        Now, moving on, in order to convict you of the charges

8     set forth against you in the indictment, the government

9     would have to prove certain elements as to each charge.  And

10    so we are going to review the elements that pertain to each

11    charge at this time.

12        And we'll start with Count 1 which is transmitting a

13    telephonic bomb threat via interstate communication.

14        The elements that the government would be required to

15    prove by proof beyond a reasonable doubt as to that charge

16    are as follows:

17        First, that you, through the use of mail, telephone,

18    telegraph, or other instrumentality of interstate or foreign

19    commerce; two, second element, willfully made a threat to

20    unlawfully damage or destroy any building, vehicle, or other

21    personal property; and the third element is that you

22    indicated the threat by means of fire or an explosive.

23        So the elements are that you, through the use of mail,

24    telephone, telegraph, or other instrumentality of interstate

25    or foreign commerce, willfully made a threat to unlawfully

1     damage or destroy any building, vehicle, or other personal

2     property by means of fire or an explosive.

3          So do you understand the elements for Count 1?

4               THE DEFENDANT:  Yes, Your Honor.

5               THE COURT:  All right.

6          And next, the elements as to Count 2, felon in

7     possession of a firearm.  First element, that you were

8     convicted of a crime punishable by imprisonment for more

9     than one year; second element, that you knew you were

10    convicted of a crime punishable by imprisonment for more

11    than one year; third, that following your conviction you

12    knowingly possessed a firearm; and finally, fourth, the

13    firearm had been shipped and transported in interstate

14    commerce.

15         So do you understand the elements that the government

16    would have to prove by proof beyond a reasonable doubt with

17    respect to Count 2, felon in possession of a firearm?

18              THE DEFENDANT:  Yes, Your Honor.

19              THE COURT:  All right.  Now, at this time, I ask

20    that the government's attorney state the facts that the

21    government is prepared to prove should this case proceed to

22    trial.

23         Mr. Allen, I want you to carefully listen to Ms.

24    Makridis as she recites the facts because following her

25    recitation of the facts, I'm going to ask you if you agree

1     that the facts as recited by the government's attorney are

2     facts that the government would be able to establish by

3     proof beyond a reasonable doubt should the case proceed to

4     trial.

5          So do you understand what we're about to do, Ms.

6     Allen?

7               THE DEFENDANT:  Yes, Your Honor.

8               THE COURT:  Perfect.  Okay.

9          So, Ms. Makridis.

10              MS. MAKRIDIS:  Thank you, Your Honor.

11         On or about June 1 of 2020, in the Northern District

12    of Ohio, the defendant, Mr. Larese Kenneth Allen, Senior,

13    through the use of a telephone, an instrument of interstate

14    or foreign commerce, willfully made a threat to unlawfully

15    damage and destroy a building, specifically the Youngstown

16    Municipal Courthouse, by means of an explosive.

17         Mr. Allen called in a bomb threat to Youngstown

18    Municipal Courthouse resulting in the evacuation of the

19    courthouse.

20         On or about July 7 of 2020, in the Northern District

21    of Ohio, Eastern Division, the defendant, Larese Kenneth

22    Allen, Senior, knowing he had been previously convicted of a

23    crime punishable by imprisonment for a term exceeding one

24    year, that being robbery, on or about September 4 of 2014,

25    in Case Number 2013CR1194, in the Mahoning County Ohio Court

1    of Common Pleas, knowingly possessed in and affecting

2    interstate commerce, a firearm, a Smith & Wesson rifle; 5.56

3    x 45 millimeter caliber, bearing serial number TJ96340, said

4    firearm having been shipped and transported in interstate

5    commerce.

6         Thank you, Your Honor.

7              MS. MIGDAL:  I cannot hear the Court.

8              THE COURT:  Mr. Allen, do you understand all of

9    the facts as recited by the assistant United States

10   attorney, Ms. Makridis?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Okay.  Do you acknowledge that the

13   facts as recited by Ms. Makridis are facts that the

14   government would be able to establish by proof beyond a

15   reasonable doubt should this case proceed to trial, sir?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Have you discussed this case and this

18   plea in detail with your attorney, and has your attorney

19   advised you of your constitutional and other rights, the

20   nature of the charges, the elements of each of the offenses

21   that the government would have to prove at trial, the

22   evidence that the government would present at trial, the

23   possible defenses that you might have, the advisory

24   sentencing guidelines and other aspects of sentencing, the

25   potential loss of civil rights and privileges such as the

1    right to vote, the right to serve on a jury, and the right

2    to possess firearms and other potential consequences of

3    pleading guilty in this case, sir?

4             THE DEFENDANT:  Yes, Your Honor.

5             THE COURT:  Are you fully satisfied with the

6    legal services and advice provided to you by your attorney,

7    sir?

8             THE DEFENDANT:  Yes, Your Honor.

9             THE COURT:  Has anyone, including the government,

10   made any promises or assurances, directly or indirectly, to

11   you to try to induce you or persuade you to plead guilty?

12            THE DEFENDANT:  No, Your Honor.

13            THE COURT:  Has anyone forced you, coerced you,

14   or threatened you in any way to get you to enter this plea,

15   sir?

16            THE DEFENDANT:  No, Your Honor.

17            THE COURT:  Is your plea of guilty being made

18   freely and voluntarily, sir?

19            THE DEFENDANT:  Yes, Your Honor.

20            THE COURT:  Are you pleading guilty to the

21   charges set forth against you in the indictment because you

22   are in fact guilty of committing those crimes, sir?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  Do you have any questions whatsoever

25   about this plea, sir?

1    THE DEFENDANT:  No, Your Honor.

2    THE COURT:  And do you still wish to enter a plea

3    of guilty in this case, sir?

4    THE DEFENDANT:  Yes, Your Honor.

5    THE COURT:  Very well, sir.  Thank you.

6    Ms. Makridis, is there anything else that you would

7    like the Court to address or that you would like to add to

8    the record before I ask Mr. Allen how he pleads in this

9    case?

10    MS. MAKRIDIS:  No, Your Honor.  Thank you very

11    much.

12    THE COURT:  Ms. Migdal, is there anything else

13    that you would like the Court to address or that you would

14    like to add to the record before I ask your client how he

15    pleads in this case?

16    MS. MIGDAL:  No.  Thank you, Your Honor.

17    THE COURT:  Thank you as well.

18    And, Mr. Allen, knowing all of your rights, knowing

19    all of the rights that you are giving up by entering this

20    plea, knowing what the possible consequences of your plea in

21    this case may be and the possible sentence that you may face

22    under this plea, how do you plead to the two charges set

23    forth against you in the indictment?

24    THE DEFENDANT:  Guilty.

25    THE COURT:  And is that a guilty plea as to both

1    charges, sir?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Mr. Allen, I accept your plea as

4    knowingly, intelligently, and voluntarily made with the

5    advice of your attorney.

6         On this basis, I find in this case, United States of

7    America versus Larese Kenneth Allen, Senior, that you, Mr.

8    Allen, are fully competent and capable of entering an

9    informed plea, that your plea of guilty is a knowing and

10   voluntary plea supported by an independent basis in fact

11   containing each of the essential elements of the offense to

12   which -- of the two offenses to which you have pleaded

13   guilty.

14        I accept your plea and find you guilty of the charges

15   set forth against you in the indictment.

16        Now, as I indicated, there will be a presentence

17   report prepared to assist the Court in imposing a sentence

18   in this case.  You will be asked to give information to a

19   United States probation officer for use in preparing the

20   report.

21        If you wish, of course, your attorney may be present

22   when you speak with the United States probation officer.

23        It is very important that you be forthright and honest

24   with the probation officer in giving the information asked

25   of you.

1      Do you understand this, sir?

2                  THE DEFENDANT:  Yes.

3                  THE COURT:  Now, you and your attorney may read

4      the presentence report prior to the time of sentencing.  I'm

5      sure, knowing your attorney, she will be very careful in

6      reviewing the information with you and assisting you to

7      review the report, given your difficulties with reading that

8      you've expressed.

9          You will have an opportunity to object to any portions

10     of the report that you believe are erroneous or in some way

11     subject to legal challenge.  And at the time of sentencing,

12     I will address any objections that you may have.

13         So it's important that you review that report prior to

14     the time of sentencing.

15         So do you understand this instruction, sir?

16                  THE DEFENDANT:  Yes, Your Honor.

17                  THE COURT:  Excellent.

18         All right.  Now, let's see.  We are looking at a

19     sentencing date of August 26, 2021 at 10:00 a.m.

20         Ms. Makridis, does that date and time work for you?

21                  MS. MAKRIDIS:  It does, Judge.

22                  THE COURT:  How about for you and your office,

23     Ms. Migdal?

24                  MS. MIGDAL:  Your Honor, I believe that that date

25     will be fine for my office.

1        If I can take a moment to indicate that Mr. Allen is

2    aware that in light of my retirement at the end of June,

3    that new counsel, who I believe to be Alvaro DeCola, would

4    be representing him at sentencing.

5        I do believe that I will be able to be with Mr. Allen

6    during most if not all of the presentence process.

7                THE COURT:  Could you just repeat that part?

8                MS. MIGDAL:  I anticipate being present with my

9    client during the probation interview.

10               THE COURT:  Excellent.

11               MS. MIGDAL:  And, Your Honor, I will do whatever

12    is necessary to ensure that there is a smooth transition.

13        And my hope is that Mr. DeCola will have the

14    opportunity to -- that I can introduce Mr. DeCola to Mr.

15    Allen prior to my leaving.

16               THE COURT:  Excellent.  Excellent.

17        All right.  So, Mr. Allen, do you understand what your

18    attorney just placed on the record?

19               THE DEFENDANT:  Yes, Your Honor.

20               THE COURT:  Okay.  So she is going to be retiring

21    before the sentencing hearing date, but she is going to work

22    with your new counsel from her office to ensure a smooth

23    transition.  And she will introduce Mr. DeCola to you, so in

24    that way you can feel very comfortable with him just as you

25    feel comfortable with Ms. Migdal.

1          Okay, Mr. Allen?

2                    THE DEFENDANT:  Yes, Your Honor.

3                    THE COURT:  All right.  And, Ms. Eckert, I would

4     ask that you let the United States Pretrial Services and

5     Probation Office know that this is something that they

6     should tend to as promptly as they can given that Ms. Migdal

7     will be retiring, and we would like her to be able to at

8     least be with Mr. Allen during his interview with the United

9     States probation officer.

10          All right.  So with that, anything further to address

11     with the Court?

12          Ms. Makridis?

13                    MS. MAKRIDIS:  No, Your Honor.  Thank you.

14                    THE COURT:  You're welcome.  Thank you.

15          My Migdal?

16                    MS. MIGDAL:  No.  Thank you very much, Your

17     Honor.

18                    THE COURT:  Thank you as well.

19          Mr. Allen, any questions for the Court, sir?

20                    THE DEFENDANT:  No.  May I talk to my attorney?

21                    THE COURT:  Yes.  We'll put you in a private

22     breakout session room.  Certainly.

23          With that, in the meantime, everyone take care and be

24     safe.

25          And go ahead, Ms. Eckert.

1          That concludes this hearing, but go ahead and place

2     them in the breakout room.

3          (Proceedings concluded at 11:04 a.m.)

4

5                    C E R T I F I C A T E

6

7          I certify that the forgoing is a correct

8     transcript from the record of proceedings in the

9     above-entitled matter.

10

11          S/Caroline Mahnke          5/28/2021

12          Caroline Mahnke, RMR, CRR, CRC     Date

13

14

15

16

17

18

19

20

21

22

23

24

25