# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 4:20-CR-422 |
| Plaintiff, | : | |
| | : | JUDGE SARA LIOI |
| vs. | : | |
| LARESE ALLEN SR., | : | **DEFENDANT LARESE ALLEN, SR.'S SENTENCING MEMORANDUM** |
| Defendant, | : | |

Defendant Larese Allen, Sr., through counsel, respectfully submits the instant Sentencing Memorandum in support of his position that he is not a "career offender" as identified in the probation report, for reasons which are discussed more fully herein. Larese Allen requests a sentence which appropriately reflects just punishment, retribution, rehabilitation, and respect for the law, while considering the individual characteristics of Mr. Allen, as required under 18 U.S.C. §3553(a) and §3661.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar No. 0051928

*/s/Alvaro L. DeCola*
ALVARO L. DECOLA
Assistant Federal Public Defender
Ohio Bar: 0087656
e-mail address: alvaro_decola@fd.org
*s/ Vanessa Malone*
VANESSA MALONE (OH 0066230)
Federal Public Defender, *Akron Office*
50 South Main St., Suite 700
Akron, OH 44308
(330)375-5739; (330)375-5738
Email address: vanessa _malone@fd.org

**MEMORANDUM**

*I.*   *Introduction*

On August 13 2020, a two-count indictment was filed against Larese Allen, charging in Count One a violation of 18 U.S.C. §844(e), and in Count Two a violation of 18 U.S.C. §922(g)(1). The offense conduct related to Mr. Allen calling the municipal court in Youngstown, Ohio and making a threat to come from Cleveland to blow up the courthouse in Youngstown. After the phone call, Youngstown Municipal Court personnel evacuated the courthouse and notified the Youngstown Police of the threat, and the bomb squad was deployed. Finding no bomb, the municipal court remained closed for business that day, and another sweep of the building was conducted by the bomb squad the next day, prior to re-opening the courthouse. After investigation, it was determined that Larese Allen had made the threat by calling the municipal court. It was also later learned that Mr. Allen had visited a shooting range and had rented a Smith and Wesson rifle from the shooting range in July of 2020. Mr. Allen returned the rifle after the range practice, and the FBI later retrieved the firearm from the shooting range, where Mr. Allen's fingerprints were lifted therefrom. These events resulted in the two counts charged in this case as noted herein.

Larese Allen entered pleas of guilt to the charges without a plea agreement, on May 19, 2021, after his return from FCI Butner after completion of a competency examination. Mr. Allen is now before this Court for sentencing. For the reasons set out below, as well as the arguments that will be made orally at the sentencing hearing, Mr. Allen respectfully requests this Court impose a sentence in consideration of the objection to the guidelines offense level computations as discussed herein, as well as Mr. Allen's significant history of mental health challenges, to fashion a sentence which is sufficient but not greater than necessary to achieve the goals of sentencing. For the reasons set forth herein, Larese Allen requests a sentence of time served, with three years of supervised release, with the first three months of supervised release served in

transitional setting where Mr., Allen can receive psychiatric counseling and medication as transition from being detained, so that he can have a better chance of staying on his medication, remaining sober, and learning to cope with the challenges of daily life.

## II. ADVISORY GUIDELINE CALCULATIONS

### A. The PSR Calculations.

The Final Presentence Report prepared by United States Probation reflected Guidelines calculations for the Offense Level for the two counts of conviction, 18 U.S.C. §844(e) and §922(g)(1), under U.S.S.G. §2A6.1 and §2K2.1. The base offense level for the bomb threat hoax count calls for a base offense level of 12 under §2A6.1(a)(1). There were no specific offense characteristics applicable, so the adjusted offense level under §2A6.1 was 12. As for the felon in possession count, the Presentence Report uses the guideline U.S.S.G. §2K2.1(a)(4)(A) to add a base offense level of 20, as the PSR reflected that Mr. Allen had a prior Ohio robbery offense under Ohio Rev. Code §2911.02(A)(2), which identified as a crime of violence under U.S.S.G. §4B1.2(a), thus the increases offense level of 20 was used to calculate Mr. Allen's guideline for the firearm offense.

Larese Allen objects to the classification of his prior Ohio robbery conviction as a crime of violence, and states that his base offense level for Count Two should be at U.S.S.G. §2K2.1(a)(6), Level 14. The Probation Report represents that Mr. Allen has a conviction under Ohio Rev. Code §2911.02(A)(2) that is a predicate prior crime of violence under U.S.S.G. §4B1.2(a). Larese Allen states that the recent United States Supreme Court's decision in *Borden v. United States*, __ U.S. __, 141 S.Ct. 1817 (2021), decided just prior to the close of this last Term, has set the culpability bar for the "force element" in crimes of violence used to enhance federal sentences. In *Borden*, the Supreme Court was tasked with determining whether an offense could

3

be classified as a "violent felony" involving force "against the person of another" if it criminalized conduct with a reckless (or negligent) *mens rea*. Resolving a Circuit split, the Court responded that such crimes do not qualify as ACCA predicates. The *Borden* Court explained, "[r]ecklessness and negligence are less culpable mental states because they instead involve insufficient concern with a risk of injury," rather than making a "deliberate choice with full awareness of consequent harm." *Borden*, 141 S.Ct. 1817, 1823-24 (2021).

Focusing on the ACCA-specific statutory language "against the person of another," the same language used in U.S.S.G. §4B1.2(a)(1), the *Borden* Court reasoned the insertion of the word "against" in that phrase was meant to infer a *mens rea* or intent requirement: "If not to incorporate an intent requirement, what function does that phrase serve?" *Borden,* 141 S.Ct. at 1827. The majority opinion provided that because the phrase "against the person of another" modified the phrase "use of force," the statute therefore targeted "conduct [that] is consciously directed." *Id*. at 1826. It concluded that crimes involving reckless conduct do not qualify as ACCA predicates because they do not require "the active employment of force against another person." *Id*. at 1834. *Borden* held that the conduct of an offence "against the person of another" must be volitional, that is, either *purposeful* or *knowing*. *Borden*, 141 S.Ct. at 1826; accord *Higdon v. United States*, 882 F.3d 605, 607 (6th Cir. 2018) (holding North Carolina statute not "crime of violence" when statute did not require force be used "against the person of another").

> **2.      Ohio Robbery Statute Contains No Culpable Mental State as to Force Element**

Looking to the Ohio robbery statute, Ohio Rev. Code §2911.02(A)(2), the statute lacks the level of culpability required to satisfy the definition of crime of violence under U.S.S.G. §4B1.2(a). Ohio Revised Code §2911.02 reads as follows:

> **(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:**

>(1) Have a deadly weapon on or about the offender's person or under the offender's control;
>
>**(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;**
>
>(3) Use or threaten the immediate use of force against another.
>
>(B) Whoever violates this section is guilty of robbery. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree.
>
>(C) As used in this section:
>…

§2911.02 (emphasis added). This version of §2911.02 was in effect at the time of Mr. Allen's prior robbery offense in 2013. As reflected in the legislative history of §2911.02, the importance of the harm, or force element section is the critical difference between Robbery and Theft, as the Legislative Service Commission stated in 1973:

> As in the section on aggravated robbery, this section provides that the difference between theft and robbery is an element of actual or potential harm to persons. Also, robbery may be committed during an attempt at theft, in the commission of theft, or during flight after the attempt or theft, when the thief uses or threatens force against another. The person against whom force is used or threatened need not be the victim of the theft itself.

Ohio Rev. Code. §2911.02, Legislative History.

Despite the importance of the potential harms associated with robbery, the Ohio statute, much like the robbery statute developed by the American Law Institute's Model Penal Code §222.1, did not include a culpability requirement in the "force" clause of the statute. The drafters of MPC §222.1 provided that the elements of robbery focus on the nature of the circumstances that distinguish robbery from ordinary theft; the time span during which these circumstances occur; and the culpability with which the actor must engage in the specified conduct. See, Model Penal

Code, 22.1 Robbery, Note. at MLA 8th Ed. Model Penal Code §222.1, HeinOnline. Specifically, the MPC version of Robbery under §222.1 is significantly similar to the Ohio statutory definition:

> **§ 222.1 Robbery**
>
> (1) Robbery Defined. A person is guilty of robbery if, in the course of committing a theft, he:
>     (a) inflicts serious bodily injury upon another; or
>     (b) threatens another with or purposely puts him in fear of immediate serious bodily injury; or
>     (c) commits or threatens immediately to commit any felony of the first or second degree.
> An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight alter the attempt or commission.
> (2) Grading. Robbery is a felony of the second degree, except that it is a felony of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury.

The commentary to §222.1 provides that it is the "force or threat of force directed at placing the victim in serious fear for his safety that justifies the escalated penalties of the robbery offense." Thus, the MPC is in concert with *Borden*, as both emphasize the fact that "force" is primary and what distinguishes a robbery from theft, or purse snatching. Importantly, the MPC identifies intention with respect to the force clause of robbery, and settled upon including no specific culpability component in §222.1, omitting "recklessly" in the final draft. The drafters also state that the exclusion of "recklessly" was *not* intended to alter the culpability under §222.1. Model Penal Code §222.1, Comment, Note 4. The Ohio Revised Code has a similar "catchall" provision for statutes which do not contain a culpability component, which provides that when a criminal offense does not specify the requisite degree of culpability or plainly indicate that strict liability should be imposed, the culpable mental state required for commission of the offense is recklessness. See, Ohio Rev. Code §2901.21(C)(1) (ed.2020)[1]. Based upon the holding in *Borden*,

---

[1] The version of §2901.21 in effect at the time Mr. Butts was convicted under §2911.02(A)(2) provided:

therefore, the Model Penal Code's version of robbery as defined in §222.1 would be insufficient as a crime of violence, based upon its use of the "recklessness" culpability standard that was denounced in *Borden* as serving a basis for enhancing a sentence under the ACCA.

Larese Allen submits that the close comparison between the Ohio robbery statute and the MPC version requires the Ohio statute to suffer a similar fate. While there has been confusing and contradictory case law emanating from the Ohio Supreme Court with respect to the culpability requirement under aggravated robbery and robbery, these cases show that whether recklessness or strict liability applies to the force component of the robbery statute, either result dooms the use of these prior convictions as predicates under U.S.S.G. §4B1.2, after *Borden*.

Section 2911.02(A)(2) includes two clauses – the theft clause and the force clause. The theft clause, required under all versions of robbery and aggravated robbery, carries with it the *mens rea* for the particular theft offense allegedly committed. The "force" clause, however, has no *mens rea*, as was seen in MPC §222.1. The Ohio Supreme Court has held that the *mens rea* for the theft clause does not provide the *mens rea* for the physical harm, or force clause element: thus there is no "transferred intent" from the theft portion to cover that of the force portion of §2911.02. See, *State v. Maxwell*, 95 Ohio St.3d 254,767 N.E 2d. 242 (Ohio 2002) (rejecting the argument that the mental state in a division of the relevant statute for one element of an offense also applies to a subsection in that division that does not specify a mental state).

---

"When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense." Former Rev. Code §2901.21(B).

Ohio cases have alternatively found the force clause of Ohio robbery statutes to either involve recklessness, see, *State v. Colon*, 119 Ohio St.3d 204 (Ohio 2008)(overruled by *State v. Horner*, 126 Ohio St.3d 466 (Ohio 2010), or strict liability, see, *Horner*, 126 Ohio St.3d at 475:

> "R.C. 2911.01(A)(3), defining the offense of serious-physical-harm aggravated robbery, plainly indicates a purpose to impose strict liability. Accordingly, R.C. 2911.01(A)(3) does not require proof of a mental state, and an indictment that does not identify a mental state is not defective."

The most recent iteration of the *mens rea* associated with robbery offenses was provided in *State v. Tolliver*, 140 Ohio St.3d 420 (Ohio 2014), where the Ohio Supreme Court determined that the prosecution did not have to prove **any** culpable mental states with respect to the force element of §2911.03(A)(3). *Tolliver*, 140 Ohio St.3d at 426. And, we know from Ohio Rev.Code §2901.21 that where culpability is not specified, the burden is to prove conduct that is reckless, or conduct that has been identified with strict liability[2]. Either a reckless standard or a no culpability/strict liability standard requires this Court to find that Larese Allen's robbery conviction under §2911.02(A)(2) is not a crime of violence after *Borden*. None of the Ohio decisions relied on a culpability standard that meets the parameters of purposeful, intentional conduct in the use of force as required under *Borden*.

### 3. Conclusion: Robbery under Ohio Rev. Code §2911.02 Not §4B1.2(a) Predicate

Based upon the above, Larese Allen states that his prior robbery conviction at Paragraph 42 of the Presentence Report is not a predicate crime of violence under the career offender guidelines. The Presentence Report provides the language from the Indictment in the 2013 case which conclusively uses "recklessly" and the mens rea for the §2911.02(A)(2) offense: "The defendant was named in a single-count Indictment that charged on September 27, 2013, the

---

[2] Strict Liability is defined as liability imposed without regard to fault. Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/strict%20liability. Accessed 11 Aug. 2021.

8

defendant, in attempting or committing a theft offense, or in fleeing immediately after such attempt or offense, *recklessly inflicted, attempted to inflict, or threatened to inflict harm on the victim*, W.T." See, PSR, ¶42 (emphasis added). Therefore, in light of the recent *Borden* Case, Larese Allen has no crimes of violence or controlled substance offenses that qualify as predicate prior convictions under U.S.S.G. §4B1.2. Mr. Allen submits that his Guidelines calculations should reflect the following as to the offense level calculations, including the multiple count adjustments under Chapter Three:

| Count 1: U.S.S.G. §2A6.1 | Offense Level 12 | U.S.S.G. §3D1.4 - 1 unit |
| Count 2: U.S.S.G. §2K2.1 | Offense Level 14 | U.S.S.G. §3D1.4 - 1 unit |
| U.S.S.G. §3D1.4 | Offense Level Used = 14 | 2 units = + 2 levels |
| U.S.S.G. §3E1.1 (a)&(b) | Minus 3 levels | **Total Offense Level 13** |

With a total Offense Level of 13, and a criminal history category of III, Larese Allen's Sentencing Range is 18 – 24 months. Mr. Allen has been in custody since July 14, 2020, and requests credit for the time he has served through the date of sentencing. With the actual service of over 13 months in custody, Mr. Allen submits that a sentence at the low end of the Guidelines range, calculating time credits for good conduct time, will leave less than two months sentence to be served. Mr. Allen submits that the recent uptick in COVID-19 cases likely due to the Delta variant surge, such a brief custody term will likely cause him to remain at Northeast Ohio Correctional Center and not be designated to a BOP facility.

### III. *Consideration of the Personal History of Larese Allen in Fashioning a Sentence*

Larese Allen states that this Court may find relevant when reviewing his case for sentencing the facts and circumstances of his upbringing and his struggles with mental stability

9

and addiction. The Presentence Report provides a chronicle of the many mental health evaluations and treatment that Mr. Allen has had, along with his current medications prescribed for his condition. Larese Allen was a child born in poverty with an absent father and a mother who was but a child when she had him at 14 years of age, and who also suffers from mental health challenges. Larese was raised by his grandmother, who remains the constant in his life, despite going through a rough period when he was a teen, when he was placed in a group home until he became an adult. Like many addicts who pass through the courts systems, Larese Allen self-medicated his anxiety and depression, and Post Traumatic Stress while attempting to compensate for his inability to cope with the daily stresses of life.

It is clear from review of the multitude of mental health records reviewed in Mr. Allen's case that he has been troubled by mental health challenges as early as age 10, and was early on diagnosed with Bipolar I and anxiety. Mr. Allen has been hospitalized on multiple occasions during his teen and young adult years, especially after a suicide attempt or threat to end his own life. Larese Allen struggles with coping and was diagnosed with poor impulse control, anxiety, depression, and substance abuse disorders. Larese Allen was hospitalized in 2017, 2018, and 2019 after suicide attempts, where in 2018 he was found hanging in his room by his mother, who was able to get him down and call for help. After this attempt Mr. Allen was admitted to Highland Springs Behavioral Hospital.

Most of the attempts at his life, or severe thoughts of self-harm which caused Mr. Allen to seek help, were precipitated by memories of the deaths of his son, who was stillborn, and the death of his daughter, who passed away at three years of age in December of 2017, after succumbing to neuroblastoma. To say that Larese Allen was devastated by the death of his daughter is likely an understatement: simply thoughts of his daughter and her demise will send him into depression

10

which has been the precipitating event for his attempts at self harm. Mr. Allen was permitted to be with his young daughter as she died, and ws left holding the toddler for hours after she had passed away. For a person with the mental challenges that Larese Allen has, the decision to permit this prolonged grieving with his daughter's corpse was very ill-advised and negligent. Notwithstanding such short-sightedness, Larese Allen has been suffering acutely due to the loss of his child.

Despite the challenges, Larese Allen does recognize that he needs coping mechanisms and medications, and appreciates the fact that since he has been regularly taking his prescribed medications, he has been more calm and feeling better with less depression. Currently Mr. Allen is taking Remeron (Mitazapine) and Zyprexa (Olanazipine) for his hallucinations, delusions, and depression. Larese Allen is very close with his children, and his grandmother has indicated that he is a good and loving father. Mr. Allen seeks to continue his relationship with his fiancé, and looks forward to being in a much healthier state so that he can be there for his family.

### IV.    *Request for Variance*

Based upon Mr. Allen's considerable history of mental health disorders and the need to receive transitional treatment so that he will be better able to rejoin society with all the attendant challenges that entails, Larese Allen requests a variance to a sentence of time served. Given the calculations of the applicable Guidelines in this instance, Mr. Allen is facing a sentencing range of 18 – 24 months. If provided with credit for time served, Mr. Allen would have 13 months served on the sentence, leaving a range of 5 – 11 months remaining. Given the application of good conduct time credits under 18 U.S.C. §3624, that range dips to 15.3 – 20.4 months, or 2 – 7 months remaining after subtracting for time served. Mr. Allen states that this Court may impose a sentence of time served and a supervised release term to follow which includes a period of halfway house placement in a facility which can attend to Mr. Allen's mental health needs, while preparing him

to re-enter society with the tools necessary to cope with the stresses and challenges of everyday life.

A sentence of time served, or approximately 13.5 months, is sufficient, but not greater than necessary to meet the goals of sentencing, while also reflecting Mr. Allen's unique challenges. Otherwise, a sentence within the 18 – 24 month range will likely result in Mr. Allen serving that time at NEOCC, where he is receiving medications but no counseling and no transition services which can assist him in maintaining his medication regimen and falling back into substance abuse. In addition, such local service of the sentence will cause Mr. Allen to not benefit from halfway house placement, which is critical for someone such as Mr. Allen, who needs assistance and a reliable source of medication and counseling. Therefore, Larese Allen requests a variance to time served, and supervised release term which imposes a period of residential placement in a facility that assists with transitioning individuals with mental health needs like Mr. Allen.

>Respectfully submitted,
>
>STEPHEN C. NEWMAN
>Federal Public Defender
>
>*/s/Alvaro L. DeCola*
>ALVARO L. DECOLA
>Assistant Federal Public Defender
>
>*s/ Vanessa Malone*
>VANESSA MALONE (OH 0066230)